**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ALBERT BENDER and MELANIE BENDER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:13-cv-0470** |
| | ) | |
| **METROPOLITAN NASHVILLE BOARD OF** | ) | **Judge Trauger** |
| **EDUCATION, JESSE REGISTER,** | ) | |
| **AIMEE WYATT, STEPHEN BALL, and** | ) | |
| **CHELSEA BENNETT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs Albert Bender and Melanie Bender have filed a *pro se* complaint, purportedly on their own behalf and on behalf of their son, Jeffrey Bender (ECF No. 1). Because the plaintiffs have been permitted to proceed *in forma pauperis*, the complaint is before the court for an initial review pursuant to 28 U.S.C. § 1915(e)(2). For the reasons set forth herein, the court finds, upon conducting that initial review, that the complaint is subject to dismissal in its entirety for failure to state a colorable claim over which this court has jurisdiction.

**I.      FACTUAL ALLEGATIONS**

As an initial matter, the court notes that the plaintiffs state on their *in forma pauperis* applications, submitted under penalty of perjury, that their son, Jeffrey Bender, is 18 years old. (*See, e.g.*, ECF No. 4, at 3.) The plaintiffs nonetheless purport to bring suit on behalf of their son as well as on their own behalf. (Complaint, ECF No. 1, at ¶ 5.)

The plaintiffs name as defendants the Metropolitan Nashville Board of Education ("School Board"); Jesse Register, who is School Board Director and Director of Schools for Metropolitan Nashville Public Schools ("MNPS"); Aimee Wyatt, Executive Lead Principal for Secondary Schools on behalf of MNPS and the School Board; Stephen Ball, principal of East Nashville Magnet School; and Chelsea Bennett, the Critical Thinking Teacher at East Nashville Magnet School. Register, Wyatt, Ball and Bennett are all sued in both their official and individual capacities.

The plaintiffs allege that Jeffrey Bender is (or perhaps was) a student at East Nashville Magnet

School. During the 2011–2012 school year, he was enrolled in the "Critical Thinking" course taught at that school by defendant Chelsea Bennett. The plaintiffs allege that Jeffrey diligently attended class and performed all assignments, and had a very high grade in the course. However, at around 5:30 in the evening on May 23, 2012, one day before the final exam, Bennett sent plaintiff Albert Bender an email advising him that "quite a few items" were "missing from [Jeffrey's] portfolio," including the score-tracking sheet. The plaintiffs were unable to reach Bennett for clarification of this message because the school year was ending. They were told to contact Bennett at the beginning of the 2012–2013 school year. The complaint does not include any factual allegations regarding what effect the missing items or the failure to communicate with Bennett had on Jeffrey's grade in the class, but in the "Relief Sought" section of the complaint, the plaintiffs seek an injunction "removing the 'D' Grade from [Jeffrey's] transcript." (Complaint ¶ 28.)

The plaintiffs telephoned Bennett at school on or around August 15, 2012, leaving her a message. Bennett returned the call, and in her turn left a message that she would speak with Jeffrey to clarify the matter. However, Bennett never spoke with Jeffrey. Instead, Principal Stephen Ball became involved in the matter, and the plaintiffs never were able to speak with Bennett either. The plaintiffs assert, conclusorily, that Ball "has set a pattern of obstructing communication between parents and teachers" and that "*[t]his is a huge, egregious, flagrant violation of MNPS policy*." (Complaint ¶ 17 (emphasis in original).)

Defendant Ball closed the matter. The plaintiffs appealed to Aimee Wyatt in her role as executive lead principal, but Wyatt "rubber stamped" Principal Ball's decision. (Complaint ¶¶ 13, 18.) The plaintiffs do not actually state what that decision was or how it affected them or their son, other than to indicate, as stated above, that their son received a D grade in Bennett's class. They assert that the decision rejecting their appeal, and leaving in place the unacceptable grade, placed at risk of imminent injury their son's "right . . . to attend the university of his choice." (Complaint ¶ 12.) The plaintiffs contend that Bennett, and presumably Ball, by cutting off any communication between Bennett and the plaintiffs, as parents of Jeffrey, violated MNPS Policy of Parental Involvement–IM 4.102 and the Parental/Family Involvement Policy of East Nashville Magnet School. MNPS and East Nashville Magnet School both apparently have a policy of ensuring "meaningful, two-way on-going communication" between parents and teachers. (*Id.*)

The plaintiffs invoke the court's federal-question jurisdiction under 28 U.S.C. § 1331, insofar as they purport to assert a violation of their rights under the Equal Protection and Due Process Clauses of the United States Constitution, redressable under 42 U.S.C. § 1983. They also assert that the court has supplemental jurisdiction over any state law claims arising from a common nucleus of operative facts that support their federal claims.

## II.      STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under th[is] statute[] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III.      DISCUSSION

### A.      Claims on Behalf of Third Party

Under Rule 17(c) of the Federal Rules of Civil Procedure, a parent or guardian may bring suit on behalf of his or her minor child. In this case, however, the plaintiffs make it clear in their applications to

proceed *in forma pauperis* that their child is not a minor. (*See* ECF No. 4, at 3.) He is 18 years old and, under Tennessee law,[1] competent to bring suit on his own behalf. Tenn. Code Ann. § 1-3-113(a). Accordingly, his parents do not have standing under either 28 U.S.C. § 1654 or Rule 17(c) to bring suit on his behalf.

Moreover, even if Jeffrey Bender were still a minor, his parents would not have the ability to bring suit on his behalf without retaining an attorney. "While a litigant has the right to act as his or her own counsel, *see* 28 U.S.C. § 1654, a non-attorney parent is not permitted to represent the interests of his or her minor child." *Lawson v. Edwardsburg Pub. Sch.*, 751 F. Supp. 1257, 1258 (W.D. Mich. 1990). "[P]arents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (citing *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

Albert and Melanie Bender, who are not attorneys, cannot bring this action on behalf of their son Jeffrey, regardless of whether he is a minor. All claims purporting to be brought on behalf of Jeffrey Bender will therefore be dismissed without prejudice to Jeffrey's ability to assert on his own behalf any viable claims he might have.

### B. The Benders' Claims under § 1983

The plaintiffs also bring claims on their own behalf under 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Thus, "in any § 1983 action, the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327

---

[1] State law is used to determine the age of majority. Fed. R. Civ. P. 17(b); *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 248 n.2 (1st Cir. 2003).

(1986); *see also McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006). "For liability to attach, both questions must be answered in the affirmative." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 506 (6th Cir. 1996).

In "Count I" of the complaint, the plaintiffs allege that the defendants "obstruct[ed] the Plaintiffs' legally protected interest in having their student pursue further learning at an educational institution of his choice," and that "Defendant Ball violated Due Process by obstructing the Plaintiffs from having a meeting with Defendant teacher Woods [sic[2]]." (ECF No. 1, at 5.) In "Count II," the plaintiffs state that the defendants violated the Fourteenth Amendment by violating MNPS policy of ensuring "meaningful two-way on-going (sic) communication between teachers and parents. . . ." (*Id.*) The court construes this language as attempting to state claims based on violations of the plaintiffs' due-process rights, and possibly of their equal protection rights as well.

### 1.      *Substantive Due Process Claim*

The Sixth Circuit "has analyzed section 1983 actions based on deprivations of due process as falling into two categories: violations of procedural due process and violations of substantive due process." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005) (quoting *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1473–74 (6th Cir. 1993)). "The substantive component of the Due Process Clause protects 'fundamental rights' that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'" *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). Substantive due process has been defined in the Sixth Circuit as "the doctrine that governmental deprivations of life, liberty, or property are subject to limitations regardless of the adequacy of the procedures employed." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992) (citations omitted).

The law is clear that parents have a "'fundamental right . . . to make decisions concerning the care, custody and control of their children.'" *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005) (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000)). However, it is equally well established

---

[2] There is no defendant named Woods. The court presumes that the plaintiffs intended to refer to the defendant teacher Bennett.

that "[t]he right to attend a public school is a state-created, rather than a fundamental, right for the purposes of substantive due process." *C.B. v. Driscoll*, 82 F.3d 383, 387 (11th Cir. 1996) (citing *Plyler v. Doe*, 457 U.S. 202, 221 (1982)); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) (holding that education is not protected under the Fourteenth Amendment as a fundamental right).

The plaintiffs appear to be alleging a substantive due process violation insofar as they claim a violation of their "legally protected interest in having their student pursue further learning at an educational institution of his choice." (ECF No. 1, at 5.) Aside from the plaintiffs' lack of standing to assert claims on behalf of their son, because even an elementary education is not a fundamental right, the parents clearly do not have a fundamental interest in assuring that their son attends the college of his choice.

The plaintiff's also appear to be asserting a substantive due process violation arising from the school officials' acts to prevent the parents from having a meeting with defendant Bennett to discuss the grade their son received in her class. Although the parents do have a fundamental right to direct the education of their child, that right is not without limits, *Blau*, 401 F.3d at 395. As the Sixth Circuit has pointed out,

> The critical point is this: While parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or . . . a dress code, these issues of public education are generally "committed to the control of state and local authorities."

*Id.* at 395–96 (quoting *Goss v. Lopez*, 419 U.S. 565, 578 (1975); *see also Leebaert v. Harrington*, 332 F.3d 134, 142 (2d Cir.2003) (noting that the fundamental right to control the upbringing and education of one's child does not include "the right to tell public schools what to teach or what not to teach him or her"); *Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 699 (10th Cir. 1998) (parents do not have a fundamental right to send their child to school part-time only and pick and choose the classes she takes); *Herndon v. Chapel Hill–Carrboro City Bd. of Educ.*, 89 F.3d 174, 176 (4th Cir. 1996) (requirement that high school students perform community service in order to graduate does not violate parents' right to control education of their children); *Brown v. Hot, Sexy and Safer Prods., Inc.*, 68 F.3d 525, 533 (1st Cir. 1995) (parents' fundamental right to control a child's education does not include the right to control curriculum at their child's public school).

Based on this precedent, the court concludes that parents have no fundamental rights whatsoever concerning their child's grades, and specifically no fundamental right to be involved in the process of determining what grade a child should receive in a particular class. *See Epperson v. Arkansas*, 393 U.S. 97, 104 (1968) ("Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values."); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969) (noting the Court had "repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools"). As another district court has had occasion to remark:

> Is there a student who has not at some point in her academic career felt (beginning as early as the first grade) that a grading system was unfair or that a particular teacher had applied the system in an unfair manner? Especially in that instance where the student has received a grade she considers to be lower than that deserved?

*Heenan v. Rhodes*, 757 F. Supp. 2d 1229, 1241 (M.D. Ala. 2010). The fact that the plaintiffs believe the grade their child received was unfair and unwarranted does not turn their claim into a federal constitutional violation. In short, the parents have no fundamental interest in the grade their child receives in a class, and no fundamental right under the United States Constitution to confer with the teacher about that grade. The plaintiffs' complaint therefore fails to state a substantive-due process claim.

### 2.    *Procedural Due Process Claim*

The plaintiffs also allege that the defendants violated the Fourteenth Amendment by failing to adhere to MNPS policy of ensuring "meaningful two-way on-going (sic) communication between teachers and parents. . . ." (ECF No. 1, at 5; *see id.* at 4–5 ("Defendant Ball has set a pattern of obstructing communication between parents and teachers. ***This is a huge, egregious, flagrant violation of MNPS policy.***").) The court understands this claim as asserting a procedural due-process violation. To demonstrate a claim for a violation of procedural, as opposed to substantive, due process, a plaintiff must establish a constitutionally protected property or liberty interest of which they were deprived without appropriate process. *Midkiff*, 409 F.3d at 762 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972); *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995)).

Here, the plaintiffs complain that school officials violated school policy. To be clear, the plaintiffs do *not* allege that they were unable to contest the grade given to their child and to appeal the decision

through the procedure established by the school board, nor do they complain that no meaningful appellate procedure was available. Rather, they indicate that they are dissatisfied with the way the initial decision to award the grade was handled and with the ultimate outcome of their appeal. However, the mere failure of a local entity to comply with its own procedures does not inevitably give rise to a federal due-process claim.[1] While meaningful communication between parents and teachers may be a laudable policy as a general matter, it is not required by the Due Process Clause of the United States Constitution. The court therefore finds that the plaintiffs have failed to establish the existence of a constitutionally protected interest for purposes of stating a procedural due-process claim.

### 3. Equal-Protection Claim

The plaintiffs state that their claims arise under the Equal Protection Clause of the Fourteenth Amendment (*see* ECF No. 1, at 2), but the complaint does not include factual allegations that would support an equal-protection claim.

The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. It is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995). The plaintiffs here do not allege membership in a protected class; even if they had, they also do not make the requisite showing of disparate treatment. See Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006) ("The threshold element of an equal protection claim is disparate treatment. . . .").

Accordingly, the court finds that the complaint fails to state a claim for violation of the plaintiffs' rights under the Equal Protection Clause.

## IV. CONCLUSION

For the reasons set forth herein, the claims brought on behalf of Jeffrey Bender will be dismissed

---

[1] Of course, a due process claim may arise from violation of local procedure where the procedure is itself required by due process. *See, e.g.*, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 62 (1993) (requiring a locality to "afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture"). That is not the case here.

without prejudice on the basis that plaintiffs Albert and Melanie Bender do not have standing to bring claims on behalf of their adult son. In addition, the plaintiffs' claims asserted on their own behalf are subject to dismissal for failure to state a claim under 42 U.S.C. § 1983 for which relief may be granted. To the extent the complaint might be construed as stating claims under state law, the court will decline to exercise supplemental jurisdiction over such state law claims. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction when claims giving rise to original jurisdiction have been dismissed).

An appropriate order is filed herewith, dismissing this case in its entirety.

Aleta A. Trauger
United States District Judge